UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rebecca Singleton as Administrator of the goods, chattels and credits which were of her deceased son, Ron Singleton,

Plaintiff,

-against-

City of New York, Police Officer Darian Shannon, Police Lt. Michael Gandolfi, Police Officer James Smith, Police Officer  Robert Holzapfel, Police Officer William Walsh, Police Officer James Gallagher, Police Sgt. Steven Cameron, Police Officer Timothy Tierney, Police Det. Robert McGee, Police Det. James Coll, and Police Officers "John Doe" # 1 to 5 (whose names being fictitious, the true names being unknown to plaintiff, the persons being New York City Police Officers).

Defendants.

Civil Action No.: 1:16-cv-5455

**COMPLAINT
AND
DEMAND FOR TRIAL BY JURY**

Plaintiff, Rebecca Singleton, as Administrator of the goods, chattels and credits which were of her deceased son, Ron Singleton, by and through her counsel, Bonita E. Zelman, as and for her Complaint, at all times hereinafter mentioned, upon information and belief, alleges:

### PRELIMINARY STATEMENT

1.      This is a civil action in which the plaintiff, Rebecca Singleton, as Administrator of the goods, chattels and credits which were of Ron Singleton, seeks damages against defendants for committing acts under color of law which deprived her son, Ron Singleton, of rights secured by the Civil Rights Act 1871, 42 U.S.C. §1983, and by the United States Constitution, including its Fourth, Fifth, Eighth and Fourteenth Amendments, for the conscious pain and suffering caused by his serious personal

1

injuries and wrongful death arising from the violation of his rights. Plaintiff seeks monetary damages, both compensatory and punitive, for these violations, and injuries, and for the defendants having caused the wrongful death of her decedent.

## JURISDICTION AND VENUE

2.      This action arises under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and under the New York State Constitution and common law.

3.      The Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367(a) and the doctrine of pendent jurisdiction, this being an action seeking redress for the violations of plaintiff's decedent's constitutional and civil rights and for his wrongful death.

4.      Venue in the Southern District of New York is proper under 28 U.S.C. §1391 because the acts complained of occurred within the district.

5.      It is alleged that in the Borough of Manhattan of New York City, the defendant the City of New York ("City"), through its police officer employees, including defendants Police Officer Darian Shannon, Police Lt. Michael Gandolfi, Police Officer James Smith, Police Officer Robert Holzapfel, Police Officer William Walsh, Police Officer James Gallagher, Police Sgt. Steven Cameron, Police Officer Timothy Tierney, Police Det. Robert McGee, Police Det. James Coll, and Police Officers "John Doe" # 1 to 5 (whose names being fictitious, the true names being unknown to plaintiff), acting jointly and severally, committed a series of wrongful acts that altogether resulted in the violation of the United States and the State of New York constitutional and common law rights of plaintiff's decedent, Ron Singleton (hereinafter "Ron Singleton" or "decedent");

2

falsely arresting him; using excessive force taking him into custody in such a manner as to cause him personal injuries, conscious pain and suffering and resulting in his wrongful death; and that said defendant employees were acting within the scope of their employment with defendant City and the New York City Police Department ("NYPD").

6.     Plaintiff's decedent, Ron Singleton, was a 45 year old African American man, who on July 12, 2013 was the victim of defendants' excessive force, unlawful search and seizure, false arrest without probable cause and denial of life-saving medical care.

7.     Defendants' deliberate indifference to decedent's serious medical needs resulted in conscious pain and suffering and in his wrongful death.

8.     It is further alleged that the defendant City is liable under 42 U.S.C. §1983 for inadequate training and supervision amounting to deliberate indifference to the rights of persons with whom the police come into contact.

9.     It is further alleged that the defendant City is liable under 42 U.S.C. §1983 by their failures: (a) to properly investigate the actions of their police officer employees, (b) to discipline the defendant police officers involved for their actions in arresting decedent without a warrant and without probable cause, (c) to discipline the defendant police officers involved for their use of unwarranted excessive force, (d) to discipline the defendant police officers for failing to intervene to prevent the use of excessive force on decedent, and (e) to discipline the defendant police officers for recklessly, deliberately and with gross negligence delaying and hindering the provision of emergency medical services to prevent his untimely death.

3

**PARTIES**

10.     On July 12, 2014, the decedent Ron Singleton was a 45 year old African-American man who resided at 482 Second Avenue, New York, NY 10017.

11.     Plaintiff Rebecca Singleton is the Administrator of the goods, chattels and credits which were of her son Ron Singleton having been granted Letters of Limited Administration on October 2, 2014, by the Order of Hon. Rita Mella, Surrogate of New York County, and she continues to act in such capacity (See **Exhibit A** for a copy of these Letters of Limited Administration).

12.     Defendant City was and is a municipal corporation duly organized and existing under and by virtue of  the laws of the State of New York.

13.     The NYPD is an agency of the defendant City.

14.     Defendant police officer ("P.O.") Darian Shannon, shield # 30638, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

15.     Defendant Lt. Michael Gandolfi is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a lieutenant with the NYPD.

16.     Defendant P.O. James Smith, shield # 26657, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

17.     Defendant P.O. Robert Holzapfel, shield # 5652, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

4

18.    Defendant P.O. William Walsh, shield # 17077, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

19.    Defendant P.O. James Gallagher, shield # 26182, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

20.    Defendant Sgt. Steven Cameron, shield # 1408, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a sergeant with the NYPD.

21.    Defendant P.O. Timothy Tierney, shield # 20591, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police officer with the NYPD.

22.    Defendant Det. Robert McGee, shield # 1498, is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police detective with the NYPD.

23.    Defendant Det. James Coll, an is an employee of the defendant City, and was at all relevant times acting under color of law and within the course and scope of his employment as a police detective with the NYPD.

24.    Defendants police officers "John Doe #1-5" (whose names being fictitious, the true names being unknown to plaintiff), are employees with the NYPD, and were at all relevant times acting under color of law and within the course and scope of their employment.

25.    Defendants P.O. Darian Shannon,  Lt. Michael Gandolfi, P.O. James

5

Smith, P.O. Robert Holzapfel, P.O. William Walsh, P.O. James Gallagher, Sgt. Steven Cameron, P.O. Timothy Tierney, Det. Robert McGee, Det. James Coll, and John Does #1-5 are sued herein individually and in their official capacities as police officers with the NYPD.

## FACTUAL ALLEGATIONS

26.     On July 12, 2014, shortly before midnight, defendant City, through its' named defendant supervisors and police officers, caused serious personal injuries to plaintiffs' decedent, Ron Singleton and ultimately resulting in his wrongful death on July 13, 2014 by reason of their use of excessive physical force in making a warrantless arrest of decedent at the location of Fifth Avenue and East 51st Street in Manhattan, NY, and with deliberate indifference depriving him of emergency medical care for his serious medical needs.

27.     Ron Singleton was pronounced dead by Dr. Maxwell Morrison of St. Lukes-Roosevelt Hospital at 01:09 AM on July 13, 2014.

28.     On July 12, 2014, at approximately 11:00 PM, a taxi cab driver picked up decedent Ron Singleton in Manhattan and was engaged in transporting him to a location near the Empire State Building in Manhattan.

29.     While driving south on Fifth Avenue toward the location of the Empire State Building, the taxi cab driver reportedly became annoyed with decedent's travel directions.

30.     As a result of the taxi cab driver's annoyance, at Fifth Avenue and East 51st Street he summoned a nearby police officer, defendant P.O. Darian Shannon, who was on foot at that location.

6

31.    Defendant P.O. Darian Shannon directed the plaintiff's decedent out of the taxi cab.

32.    When decedent Ron Singleton asked defendant P.O. Darian Shannon to identify himself to decedent, defendant P.O. Shannon became angry, refused to identify himself, and called a code 10-85 for other police officers to respond to the scene.

33.    Defendants Lt. Michael Gandolfi, P.O. James Smith, P.O. Robert Holzapfel, P.O. William Walsh, and P.O. James Gallagher, all responded to the radio request of defendant P.O. Darian Shannon.

34.    All six (6) defendant officers,  Lt. Michael Gandolfi, P.O.s Smith, Holzapfel, Walsh, and Gallagher and Shannon, then forcibly removed decedent from the taxi cab, forced him down to the ground, arresting him and handcuffing him with his hands behind his back.

35.    These six (6) defendant officers used excessive force by forcing decedent to the ground and pinning him face down, restraining him and forcibly handcuffing him.

36.    In restraining decedent to the ground, force was used to decedent's back and neck while he was on the ground by said defendants.

37.    While decedent was being pinned down on the ground with said defendant officers on top of him, he is reported to have let out a blood curdling scream and immediately become limp and unmoving.

38.    At or about this time, defendant police Sgt. Steven Cameron, shield # 1408, the Midtown Precinct North Patrol Supervisor, and defendant P.O. Timothy Tierney, shield # 20591, assigned to RMP 1662 arrived at the location and observed Ron Singleton handcuffed and lying on the ground.

39.     Defendants, Det. Robert McGee, shield # 1498, and Det. James Coll, shield # 1121, who were assigned to Emergency Support Unit ("ESU") Squad 1, responded to the location.

40.     Defendants Det. Robert McGee and Det. James Coll, of the NYPD ESU unit placed decedent face down into a device known as a "Posey Vest" a/k/a "Body Burrito" while still in handcuffs.

41.     Defendants Det. Robert McGee and Det. James Coll failed to  adequately assess or monitor the decedent's medical condition after restraining him in the "Body Burrito".

42.     Emergency Medical Technicians ("EMTs") assigned to Roosevelt Hospital, Daniel Akinyemi and Mervyn Mark arrived on the scene at 00:25 hours and reported that they found decedent "inside of ESU body wrap, a/k/a "Burrito", and lying face down on the concrete in the street so that he could not be medically evaluated.

43.     Upon patient contact, the said EMTs asked a Midtown North Sergeant to place the patient on his back so he could get medically evaluated.

44.     The Sergeant refused to grant the EMTs request.

45.     The use of a Posey Vest or Body Burrito by defendants Det. Robert McGee and Det. James Coll was contraindicated because the decedent was handcuffed and limp.

46.     The Roosevelt Hospital EMTs immediately asked the NYPD to remove the restraint, but NYPD did not grant the request quickly.

47.     EMT personnel Mervyn Mark and Daniel Akinyemi requested that a police sergeant "place [the decedent] on his back so he could get evaluated" by the medical

personnel, however, the defendant police sergeant refused to do so.

48.     FDNY Paramedic Lt. Kim Quigley, shield # 133, of FDNY Station 7, arrived

at the scene at approximately 00:25 AM, in response to a call for an "Aided", when EMT

personnel Mervyn Mark and Daniel Akinyemi already present approached her and told

her the patient was inside the ambulance now and face down, and could not be

medically evaluated until he is turned over.

49.     FDNY Paramedic Lt. Kim Quigley, peered inside the ambulance and saw

decedent restrained in a bag, handcuffed and lying face down on a stretcher.

50.     FDNY Paramedic Lt. Kim Quigley advised P.O. Gallagher (shield #26182)

of the NYPD who was standing outside the Roosevelt Hospital ambulance that the

patient had to be turned over onto his back to be medically evaluated.

51.     According to FDNY Paramedic Lt. Kim Quigley, P.O. Gallagher did not

acknowledge her or say anything.

52.     FDNY Paramedic Lt. Kim Quigley quickly responded across the street and

approached a male, white ESU officer and advised him the patient needed to be turned

over.  The ESU officer stated the patient was "on his side", and Lt. Quigley reiterated "no

he's on his stomach."

53.     This ESU officer responded across the street to the ambulance.

54.     FDNY Paramedic Lt. Kim Quigley then went back to the Roosevelt Hospital

ambulance and saw the patient still partially in the body bag, lying face up, but was still

handcuffed behind his back.

55.     The Roosevelt Hospital EMTs apparently had cut open the body bag.  The

patient was in cardiac arrest, and Lt. Quigley and the EMTs conducted CPR and

preliminary care of he patient.

56.    However, the defendant police officers refused to quickly remove the

decedent's handcuffs, and the Roosevelt Hospital EMTs and Lt. Quigley were forced to

attempt CPR "to the best of their ability".

57.    The medical records of decedent from St. Luke's-Roosevelt Hospital

Center indicate that decedent arrived at their facility at 01:04 AM by "Ambulance -

FDNY", and that decedent was diagnosed as "Cardiac arrest (427.5) and "Expired -

DOA" at 01:12 AM.

58.    The New York City Medical Examiner, Dr. Jay Stahl-Herz reported that

claimant's deceased son died following physical restraint by police and labeled the

manner of death as "Homicide."

59.    After the July 13, 2014 autopsy performed on the body of plaintiff's

decedent, the Office of Chief Medical Examiner's prepared an autopsy report signed on

September 2, 2014 by medical examiner Jay Stahl-Herz, MD.

60.    On August 14, 2014, or just 4 weeks after decedent's death at the hands of

the defendant police officers, plaintiff had requested the following records from the

Office of Chief Medical Examiner:

> "complete Autopsy Report to include Pathology, Laboratory Toxicology,
> Histology, Microscopic analyses as well as the Medical Examiner's
> Investigation File and reports"

61.    In addition, plaintiff also requested the preservation of evidence gleaned

during the autopsy such as samples and tissue slides.

62.    However, the Chief Medical Examiner's office refused to provide the

plaintiff with the complete autopsy records and provided only a partial report on

10

February 5, 2016.

63.    The Chief Medical Examiner's office did not provide the full autopsy records until March 31, 2016.

64.    The decedent prior to his death experienced pain and suffering from the use of excessive force on him by the arresting police officers forcibly restraining him face down on the ground, and kneeling on his back and neck, having suffered cardiac arrest occasioned by the actions of the defendants.

65.    The decedent prior to his death experienced the extreme fear of impending doom and death.

66.    The unwarranted arrest and death of Ron Singleton was unconscionable, shocking and the sort of action which must be eliminated and deterred to preserve the values of a civilized society.

67.    Prior to the commencement of this action and on October 10, 2014, within ninety (90) days after the claims herein sued upon arose, plaintiffs duly served Notice of Claim upon defendant City, setting forth when and the place where the incidents which are the subject of this suit occurred and the nature and extent of the damages.

68.    More than thirty (30) days have elapsed since such presentation and the defendant City has wholly failed to adjust same or make payment thereon.

69.    Defendant City conducted its statutory General Municipal Law 50-h hearing on August 25, 2015.

70.    This action is being commenced within two years after the July 13, 2014 wrongful death of plaintiffs' decedent, Ron Singleton.

## FIRST CAUSE OF ACTION
### (Against defendants police officers)
### For False Arrest)

71.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72.     The arresting defendant police officers had no probable cause to order the decedent out of his taxi cab and arrest him, and  deprived decedent of rights, privileges and immunities secured by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

73.     By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims damages against defendants in an amount to be determined upon the trial of this action.

## SECOND CAUSE OF ACTION
### (42 U.S.C. §1983 - For Use of Excessive Physical Force)

74.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

75.     The actions of said defendant police officers were a use of excessive physical force without justification or provocation, and the subsequent failure to provide proper emergency medical care to plaintiff's decedent, injured while in their custody, deprived decedent of rights, privileges and immunities secured by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

76.     By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims

damages against defendants in an amount to be determined upon the trial of this action.

## THIRD CAUSE OF ACTION
### (Failure to Intercede)

77.      Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

78.      Defendant police officers, including their supervisory personnel at the scene, failed to timely intercede to prevent the other defendant police officers present from using excessive force against decedent in making a warrantless arrest.

79.      Defendant police officers, including their supervisory personnel at the scene, failed to timely intercede to prevent the other defendant police officers present from placing the decedent face down in a body wrap while handcuffed behind his back making it very difficult or impossible to breathe.

80.      Defendant police officers, including their supervisory personnel at the scene, failed to timely intercede to require the other defendant police officers present to turn the decedent's body over and quickly remove the decedent's handcuffs causing unwarranted delays in the provision of medical treatment to decedent.

81.      By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims damages against defendants in an amount to be determined upon the trial of this action.

## FOURTH CAUSE OF ACTION
### (Deliberate Indifference to Serious Medical Needs)

82.      Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

83.      At all relevant times, decedent was in the custody of the defendants after

his false arrest.

84.     All six (6) defendant officers,  Lt. Michael Gandolfi, P.O.s Smith, Holzapfel, Walsh, and Gallagher and Shannon, exercised unlawful and excessive physical restraint on decedent after they forced him to the ground face down and handcuffed him.

85.     After wrongfully deciding to place decedent in a Posey Vest a/k/a "Body Burrito", defendants Det. Robert McGee and Det. James Coll, assigned to an Emergency Services Unit of the NYPD, failed to properly assess decedent as being in extreme danger of medical complications from the use of this device; failed to keep decedent under constant supervision and recognize that his health could be compromised by the device; and ignored the risk of serious injury to the patient in that the patient's limbs, circulation and breathing will be restricted with its use.

86.     After seeing that the decedent went limp after being handcuffed behind his back, said defendants failed to make a complete assessment of the decedent to insure restraint use was appropriate.

87.     After observing the symptoms as shown by the decedent of his going into cardiac arrest, defendants then failed to remove or open the Posey Vest so as to allow prompt emergency CPR to be applied.

88.     When the defendant officers Det. Robert McGee and Det. James Coll put decedent into the ambulance, they left him face down in the Posey Vest with his hands still handcuffed behind his back.

89.     The failure of defendant ESU officers Det. Robert McGee and Det. James Coll to remove the Posey Vest or straight jacket and handcuffs before putting the decedent in the ambulance caused a delay in decedent's receipt of medical care

14

delaying and reducing any opportunity for his survival through provision of prompt emergency medical care.

90.     The actions of defendant police officers in delaying decedent's receipt of medical care occasioned by their arrest, handcuffing and placing decedent in a Posey Vest (a/k/a Body "Burrito") were wanton, reckless and malicious in their disregard for his rights.

91.     By reason of the above, the defendants were being deliberately indifferent to decedent's serious medical needs in violation of the Eighth Amendment and which directly resulted in decedent's conscious pain and suffering and wrongful death.

92.     By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims damages against defendants in an amount to be determined upon the trial of this action.

## FIFTH CAUSE OF ACTION
### (Monell Training and Supervisory Liability)

93.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94.     Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, in the proper use of a "Posey Vest" or "Body Burrito" although the NYPD provided the device for its use on citizens.

95.     The provision of said "Posey Vest" or "Body Burrito" to police personnel was in common use by ESU police personnel to restrain individuals such that its proper use required training by defendant City.  Its use required specialized training to be a safe method of restraint.

96.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, in indications for use of the device, in assessment of persons before its use, including contraindications for its use.

97.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, to recognize that such "Posey Vest" or "Body Burrito" use should never be used on an individual who is limp and handcuffed behind his back.

98.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, to avoid using such a "Posey Vest" or "Body Burrito" on persons suffering from seizures, a cardiac condition or cardiac arrest.

99.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, on the proper use of said devices on a person who is overweight.

100.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, that any person so restrained should be under constant supervision for the recognition of the symptoms a person has when undergoing a cardiac arrest.

101.    Defendant City has failed to train their defendant police officers, including their Emergency Services Unit officers, to check the patient's limbs, circulation and breathing frequently since if this device is too tight, circulation or breathing will be restricted.

102.    One of the training failures of the defendant City is that staff must have on-going training and be able to demonstrate competency to use "Posey Vest" or "Body

16

Burrito" in accord with Posey Instructions and State and Federal Regulations.

103.   Defendant City has failed to properly and adequately train their defendant police officers, including their Emergency Services Unit officers, to provide retraining of its police officers to a sufficient degree in the appropriate and proper use of the said devices  although it knew that the use of these devices was common in restraining citizens.

104.   The actions of the defendant police officers in their use of the "Posey Vest" or "Body Burrito" on plaintiff's decedent indicated that the training was deficient to such an extent that it amounts to defendant City being deliberately indifferent to the safety of civilians being subjected to its use.

105.   None of the defendant police officers were disciplined for their actions regarding the warrantless arrest of decedent, their actions causing undue delays in decedent receiving urgent life saving medical care, resulting in his death.

106.   The failure of the defendant City to discipline any of the police officers involved in the warrantless false arrest of decedent, and their failure to intercede to prevent or stop such, amounts to deliberate indifference to the rights of its citizens and a ratification of defendants' actions.

107.   The failure of the defendant City to discipline any of the supervisory police officers present at the scene for their failures to intervene and prevent the delaying of the decedent's medical care amounts to ratification of their failures to act.

108.   The injuries and wrongful death sustained by decedent  were the result of the failure of defendant City's supervisors, who were present at the scene, to adequately

17

supervise the use by ESU defendants of the Posey Vest device, and monitoring of decedent.

109.    As a result of the failure of the City to oversee the proper implementation of adequate policies and procedures for training and on-going training of ESU officers in use of restraint devices, defendants caused violations of decedent's constitutional rights which resulted in the ultimate injury and death of Ron Singleton.

110.    By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims damages against defendants in an amount to be determined upon the trial of this action.

**SIXTH CAUSE OF ACTION**
**(Wrongful Death)**

111.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.    By reason of the foregoing, plaintiff's decedent, Ron Singleton, died on July 13, 2014.

113.    The decedent left surviving his children, Ronesha and Rondalyn Singleton, Tyrone Hood and his next of kin.

114.    By reason of the foregoing, decedent's children have been deprived of his paternal care and financial support, guidance, companionship and loving care.

115.    By reason of the foregoing, Rebecca Singleton, as Administrator of the good, chattels and credits, which were of her deceased son, Ron Singleton, claims damages against defendants in amount to be determined upon the trial of this action.

**STATEMENT REGARDING PUNITIVE DAMAGES**

116.   Without pleading punitive damages as a separate cause of action, plaintiff hereby puts the individual defendants on notice that defendants' respective acts and omissions, which were performed on the basis of racial profiling and racial animus, were intentional, wanton, malicious, reckless and oppressive, and so incredibly deviated from accepted and proper police practices and standards, that they exhibited a gross disregard for the welfare and safety of the public at large and in particular, for the life of plaintiff's decedent, Ron Singleton, herein, such that plaintiff shall request that a judgment granting punitive damages be entered against said individual defendants, so as to punish said defendants and deter similar conduct on the parts of others.

**WHEREFORE** plaintiff, Rebecca Singleton, as Administrator of the goods, chattel and credits which were of Ron Singleton, demands judgment against the defendant City, defendant police officer employees, and respectfully requests:

   a.   an order awarding compensatory damages against each defendant on each cause of action;

   b.   an order awarding punitive damages as against the individual defendant police officer employees;

   c.   an order awarding the costs of this action including attorneys fees pursuant to 42 U.S.C. §1988; and

   d.   Such other and further relief as this Court may deem just and proper.

**A JURY TRIAL IS DEMANDED**

19

Dated:   Lake Success, New York
        July 7, 2016

                          Yours, etc.,

                          Law Offices of Bonita E. Zelman

*Bonita E. Zelman Esq.*

                          By: Bonita E. Zelman, Esq. (BZ4890)
                          Attorneys for Plaintiff Rebecca Singleton
                          Administrator of the goods, chattels and credits
                          which were of her deceased son, Ron Singleton
                          2001 Marcus Avenue, Suite S150
                          Lake Success, NY 11042
                          Tel. No. 516-616-0707
                          Fax No. 516-616-0761

20

Exhibit A

FACE OF DOCUMENT CONTAINS A MULTICOLORED VOID PANTOGRAPH AND MICROPRINT BORDER. THIS DOCUMENT ALSO HAS
INVISIBLE FLUORESCENT FIBERS, ARTIFICIAL WATERMARK ON BACK, AND A CHEMICAL REACTIVE VOID FEATURE.

Certificate# 134888

# Surrogate's Court of the State of New York
# New York County

File#: 2014-3289

## Certificate of Appointment of Administrator

To all to whom these presents shall come or may concern,

That we, having inspected the records of our Surrogate's Court in and for the County of New York, do find that on October 2, 2014 by said court, LETTERS OF LIMITED ADMINISTRATION on the goods, chattels and credits of Ron Singleton, deceased, late of the County of New York were granted unto the fiduciaries listed below.

**Name of Decedent:** **Ron Singleton**

Date of Death:     July 13, 2014

Domicile:     County of New York

Fiduciary Appointed:     **Rebecca Singleton**

Letters Issued:     LETTERS OF LIMITED ADMINISTRATION

Letters Issued On:     October 2, 2014

**Limitations:  These letters issued with power to prosecute only and not with power to collect or compromise or exercise any other powers until the further order of this court, or the order of any court of competent jurisdiction (EPTL 5-4.6).**

and such Letters are unrevoked and in full force as of this date.

Dated: October 6, 2014
      New York, New York

IN TESTIMONY WHEREOF, the seal of the New York County Surrogate's Court has been affixed.

WITNESS, Honorable Rita Mella, Judge of the New York County Surrogate's Court.

_____
Diana Sanabria, Chief Clerk
New York County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the New York County Surrogate's Court and expires six months from the issue date of this certificate.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rebecca Singleton as Administrator of the goods, chattels and credits which were of her deceased son, Ron Singleton,<br><br>        Plaintiff,<br><br>    -against-<br><br>City of New York, Police Officer Darian Shannon, Police Lt. Michael Gandolfi, Police Officer James Smith, Police Officer  Robert Holzapfel, Police Officer William Walsh, Police Officer James Gallagher, Police Sgt. Steven Cameron, Police Officer Timothy Tierney, Police Det. Robert McGee, Police Det. James Coll, and Police Officers "John Doe" # 1 to 5 (whose names being fictitious, the true names being unknown to plaintiff, the persons being New York City Police Officers).<br><br>        Defendants. | Civil Action No.: **1:16-cv-5455** |

**COMPLAINT
AND
DEMAND FOR TRIAL BY JURY**

Law Offices of Bonita E. Zelman

By: _Bonita E. Zelman Esq_

Bonita E. Zelman, Esq. (BZ4890)
Attorneys for Plaintiff
Administrator of the g/c/c
which were of her son, Ron Singleton
2001 Marcus Avenue, Suite S150
Lake Success, New York 11042
Tel. No. 516-616-0707
Fax No. 516-616-0761